AO 106 (Rev. 04/10) Application for a Search Warrant    CS

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>460 Scott Farms Blvd., Marysville, OH 43040 | )<br>)<br>)  Case No.  2:22-mj-201<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. 922(a)(6) | Making a false written statement during the acquisition of a firearms from an FFL |
| Title 18 U.S.C. 371 | Conspiracy |
| Title 18 U.S.C. 922(a)(1) | Engaging in the business of dealing in firearms without a license |

The application is based on these facts:

See Affidavit in Support of the Application, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Teresa Petit SA5484*
*Applicant's signature*

Teresa Petit, Special Agent #5484
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/22/2022

*Chelsey M. Vascura*
*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH AND SEIZURE WARRANTS | Case No. 2:22-mj-201<br><br>**UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Teresa J. Petit, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so since 2014, and I am currently assigned to the Columbus, Ohio, Field Office.

3. I have participated in numerous investigations focusing on firearms trafficking, gangs, and the distribution of illegal narcotics. I have conducted covert surveillance of suspected traffickers, interviewed numerous individuals involved in gangs, the illegal firearms trade, and/or narcotic trafficking trade. I been a member of surveillance teams, participated in the execution of numerous state and federal search and arrest warrants involving firearms and/or illegal narcotic traffickers and violent offenders, and participated in the seizure of numerous firearms and controlled dangerous substances. Through my training, education, and experience, I have become familiar with the manner in which firearms intended for criminal use are transported,

1

stored, and resold, similar to the transportation, storage and distribution of illegal narcotics. I am also familiar with the methods of payment for such unlawful transfers of firearms and the distribution and the manner in which firearms and/or narcotic traffickers communicate with each other.

4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, records, and reports. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. I have not included all of the information relevant to the investigation in this Affidavit, but I do not believe that I have omitted any information that would have a tendency to defeat a showing of probable cause. To the best of my knowledge and belief, all statements made in this Affidavit are true and correct.

6. I submit this Affidavit in support of an application for a warrant to search at the residence of 460 Scott Farms Blvd., Marysville, Ohio, 43040, (hereinafter "TARGET PREMISES") further described in Attachment A.

7. Based on the facts set forth in this Affidavit, there is probable cause to believe that Brian CUNNINGHAM (hereinafter "CUNNINGHAM"), Mariah CUTLIP (hereinafter "CUTLIP"), Walter RATHBURN (hereinafter "RATHBURN"), Tyson RATHBURN (hereinafter "T. RATHBURN"), and others have committed violations of the following federal laws: Title 18, United States Code, Section 922(a)(6), that is, knowingly making any false or fictitious oral or written statement to a firearms dealer with respect to any fact material to the lawfulness of the acquisition or disposition of firearms and ammunition; Title 18, United States Code, Section 922(a)(1)(A), that is, engaging in the business of dealing in firearms without a

2

license; Title 18, United States Code, Section 2, that is, aiding, abetting, counseling, commanding, or soliciting a criminal act; as well as Title 18, United States Code, Section 371, that is, two or more persons conspiring to commit any offense against the United States. (All of the above offenses are collectively referred to throughout as the SUBJECT OFFENSES.) There is also probable cause to search the TARGET PREMISES described in Attachment A for evidence, instrumentalities, and/or fruits of the above crimes, as further described in Attachment B.

8. Because this Affidavit is being submitted for the limited purpose of seeking authorization to execute a search warrant on the TARGET PREMISES, I have not set forth each and every fact learned during the course of this investigation. I am not relying upon facts not set forth herein in reaching my conclusion that a warrant should be issued. Nor do I request that this Court rely upon any facts not set forth herein in reviewing this Affidavit in support of the application for a search warrant.

## FACTS ESTABLISHING PROBABLE CAUSE

9. In approximately mid-December 2021, CUNNINGHAM's large volume of firearm purchasing came to the attention of ATF and other law enforcement officials. By way of summary background, the investigation has indicated that CUNNINGHAM had, between approximately July of 2021 and January 5, 2022, purchased approximately 238 firearms.

10. The investigation has indicated that CUNNINGHAM stores firearms at the TARGET PREMISES. On or about January 5, 2022, CUNNINGHAM voluntarily sat down with law enforcement, including your affiant, to discuss his high-volume acquisitions, specifically that his high-volume acquisitions were of repeated type, manufacturer, and model of firearms. During this interview CUNNINGHAM described himself as a firearm collector. He

explained he was investing in firearms as a retirement investment and only periodically resold firearms from his "private collection" that he was no longer interested in. During this conversation CUNNINGHAM indicated that he stores his "private collection" in a large safe inside his garage located at the TARGET PREMESIS. Law enforcement explained to CUNNINGHAM that if he decides to make a profit selling his firearms in the future that he would need to apply for a Federal Firearms License ("FFL"). Following the interview, CUNNINGHAM forwarded law enforcement numerous photographs, which he indicated were from inside the TARGET PREMISES, depicting various firearms located in safes. In my training and experience, an individual who engages in repetitive acquisition of similar firearms is an indicator of someone acquiring the firearms for resale.

11. Between the dates of on or about March 4-11, 2022, CUNNINGHAM purchased approximately sixty-five (65) firearms from the same FFL located in the Southern District of Ohio. Those firearms were purchased across three (3) different transactions. The purchases accounted for: ten (10) Taurus-manufactured, G3C model, 9mm caliber, semi-automatic handguns; twenty-four (24) SCCY Industries, model CPX-2, semi-automatic handguns; twenty-three (23) Glock-manufactured, semi-automatic handguns in various models and calibers; and eight (8) Smith and Wesson-manufactured, M&P 9 model, 9mm caliber, semi-automatic handguns.

12. On or about March 16, 2022, CUTLIP entered an FFL located in the Southern District of Ohio and purchased a total of sixty-seven (67) firearms between two transactions. One transaction accounted for six (6) Taurus-manufactured, model G3C, 9mm, semi-automatic, handguns. The second transaction accounted for a total of sixty-one (61) firearms. Of those sixty-one (61) firearms, nineteen (19) were Taurus-manufactured, model G3C, 9mm, semi-

4

automatic handguns; forty (40) were SCCY Industries-manufactured, model CPX-2, 9mm, semi-automatic handguns; and two (2) were Ruger-manufactured, model 57, 57 caliber, semi-automatic, handguns. Your affiant knows through training and experience that these firearms are not a firearm model typically collected, given that they are viewed items that are not hard to acquire. Investigators learned that CUTLIP transferred the firearms from her possession within hours of the purchase to T. RATHBURN.

13. On or about March 21, 2022, your Affiant spoke with the owner of the FFL where CUTLIP completed her transaction. During the conversation with that FFL, your Affiant learned that CUTLIP's order for the sixty-seven (67) firearms was placed by another individual further identified as Brian CUNNINGHAM. CUNNINGHAM contacted the FFL to place the order for the firearms, provided CUTLIP's full name and address, and acted as a middleman between CUTLIP and the FFL. The FFL stated that once the order was complete, he/she notified CUNNINGHAM that the order was ready for pick-up, and soon thereafter CUTLIP came to the location to complete the purchase. The FFL stated that CUTLIP's transaction was approximately $9030.00 and was paid entirely in cash provided by CUTLIP.

14. Continuing on or about March 21, 2022, your Affiant again spoke with the owner of the FFL and learned that CUNNINGHAM had placed an order approximately 2 weeks prior on behalf of another individual later identified as W. RATHBURN. The FFL stated he/she received a text message from CUNNINGHAM with a picture of handwritten notes that contained the firearm order with the name "Walter" written on it. Your affiant located records that indicate W. RATHBURN had purchased approximately fifty-two (52) firearms between three (3) separate transactions on or about March 11, 2022. Of those fifty-two (52) firearms: thirty-6 (36) were SCCY Industries-manufactured, model CPX-2, 9mm caliber, semi-automatic handguns;

5

and sixteen (16) were Glock-manufactured, semi-automatic handguns in various model and caliber. Investigators learned that W. RATHBURN's firearm transactions were came to a combined approximate total of $13,270. Investigators learned that CUNNINGHAM accompanied W. RATHBURN to the FFL and after departing from the FFL most of the firearms were transferred to CUNNINGHAM with T. RATHBURN retaining some.

15. Your affiant is aware from training and experience that the above-described transactions bear strong indicators of illegal straw purchasers. By way of background, pursuant to federal law and regulation, the FFL is required to obtain a completed ATF Form 4473 (the "Firearms Transaction Record") from the actual purchaser of a firearm before the FFL can transfer or sell a firearm to any unlicensed person. 18 U.S.C. § 923(g); 27 C.F.R. § 478.124. ATF Form 4473 gathers a host of information about the purchaser, including information to determine if the purchaser may lawfully possess a firearm. FFLs also may not transfer a firearm to an unlicensed person without first conducting a background check through the National Instant Check System ("NICS"), and recording the information on the ATF Form 4473. 18 U.S.C. § 922(t); 27 C.F.R. § 478.102. The NICS process is run by the Federal Bureau of Investigation ("FBI") and provides the mechanism through which FFLs determine whether a particular purchaser is prohibited from possessing firearms. Providing false or misleading information to an FFL in connection with the acquisition of a firearm, e.g. lying on the ATF 4473, is violation of federal law. 18 U.S.C. § 922(a)(6). Additional information asked on the ATF 4473 incudes the following question: *"Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)?"* A bold warning is also provided with this question: *"You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee*

6

*cannot transfer the firearm(s) to you."* Marking yes to the above question, and then transferring the purchased firearms to the actual buyer, qualifies as an illegal straw purchase in violation of 18 U.S.C. § 922(a)(6).

16. In my training and experience, it is common for individuals who otherwise intend to divert the firearm(s) to criminal possession to use a straw purchaser to complete the retail transaction on their behalf or to acquire firearms from other unlicensed individuals. It is also common for straw purchasers to receive a benefit of some type, in this situation, a monetary benefit, to assume the risk of purchasing the firearm. More specifically a "straw" purchase is described as the acquisition of a firearm(s) from a dealer by an individual (the "straw"), done for the purpose of concealing the identity of the true intended recipient or transferee of the firearm(s). Your Affiant learned that both CUTLIP and W. RATHBURN completed the ATF Form 4473. During the continued investigation, your Affiant learned that CUNNINGHAM was seeking individuals who would pick up firearm orders for compensation of approximately $500.

17. On March 22, 2022, your Affiant learned that a firearm originally purchased by W. RATHBURN on or about March 11, 2022, was recovered by law enforcement officials in Rochester, New York. The time-to-crime recovery for this firearm is ten (10) days. Your affiant knows from training and experience that a 10-day time-to-crime is a short amount of time and is an indicator of firearms trafficking. Most individuals who purchase firearms retain them for extended periods up to years in length. Therefore, whenever a firearm is recovered in a criminal offense shortly after it was purchased, it is highly likely that the firearm was diverted to the criminal possession in some sort of firearm trafficking scheme. Your affiant also knows from training and experience that a shorter the time-to-crime period (that is, anything under a year) for the firearm recovery is an indicator that the original purchaser.

7

18. Your affiant conducted a query of ATF databases, which returned negative results for CUNNINGHAM, CUTIP, W. RATHBURN, or T. RATHBURN having any current affiliations related to ownership or licensing with other FFLs.

19. Your affiant knows based on training and experience that individuals who possess firearm and ammunition often possess other items commonly used or acquired in connection with the possession of firearms and ammunition. Some of these items include, but are not limited to, other firearms, firearm parts, additional ammunition, firearm receipts, firearms brochures or owner's manuals, records of sale or acquisition of firearms, firearms magazines, and holsters.

20. Your affiant knows based on training and experience that individuals who possess the above-described items (i.e., firearms, ammunition, and other items commonly used or acquired in connection with the possession of firearms and ammunition) often store those items—including firearms and ammunition—in their homes or cars, so that the firearms and ammunition are easily accessible. I also know that firearms are durable and non-perishable goods, which can be expected to remain in the individual's possession for extended periods of time.

21. Your affiant knows based upon training and experience that individuals who possess the above-described items (i.e., firearms, ammunition, and other items commonly used or acquired in connection with the possession of firearms and ammunition) often store information regarding the above items (including information relating to the purchase of the items, as well as pictures of the items) on their personal electronic devices, including cellular telephones and computers. Moreover, the investigation has indicated that the CUNNINGHAM used cellular phone communications, including text messages, to communicate regarding the

8

straw purchases articulated in this Affidavit.

22. Your affiant submits, based upon the information set forth above, and upon training and experience, that the TARGET PREMISES is likely to contain evidence that will aid in developing further evidence of the co-conspirators' firearm trafficking activities, including further establishing a pattern of CUNNINGHAM, CUTLIP, W. RATHBURN, T. RATHBURN, and others in their firearm trafficking activities.

## CONCLUSION

23. Based on the information set forth in this Affidavit, I submit there is probable cause to believe that the individuals identified as Brian CUNNINGHAM, Mariah CUTLIP, Walter RATHBURN, Tyson RATHBURN and others have committed violations of the SUBJECT OFFENSES—that is, 18 U.S.C. § 922(a)(6) (straw purchase of a firearm); 18 U.S.C. § 922(a)(1)(A) (unlicensed selling of firearms); 18 U.S.C. § 2 (aiding and abetting); 18 U.S.C. § 371 (conspiring to violate federal law). Your affiant further submits there is probable cause to believe that the property and premises located at the TARGET PREMISES, 460 Scott Farms Blvd., Marysville, OH, 43040, contains evidence and instrumentalities of violations of federal law.

24. Accordingly, your affiant respectfully requests that this Court issue a warrant authorizing the search of the TARGET PREMESIS, and authorization to search for and seize the items described in Attachment B hereto, incorporated herein by reference.

25. Your affiant further requests that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. Your affiant believes that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into criminal activity,

9

the entire extent of which is not known at this time. Based upon my training and experience, and information I have received from ATF and other law enforcement agents, your affiant knows that criminals actively search for criminal Affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate—e.g., by posting them publicly online through different forums. Premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Teresa Petit, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to me this
22 day of March, 2022.

Magistrate Judge Chelsey M. Vascura
United States District Court
Southern District of Ohio

# ATTACHMENT A

The property to be searched is a located at 460 Scott Farms Blvd., Marysville, OH, 43040. The single-family residence is a two-story structure with attached garage and appears as cream in color with white trim. The numbers "460" are affixed to the front of the residence above the garage. This warrant authorizes the search of the residence, any vehicles located on the property, and any sheds or out buildings on the curtilage for evidence of Title 18, United States Code, Section 922(a)(6), that is, knowingly making any false or fictitious oral or written statement to a firearms dealer with respect to any fact material to the lawfulness of the acquisition or disposition of firearms and ammunition; Title 18, United States Code, Section 922(a)(1)(A), that is, engage in the business of dealing in firearms without a license; Title 18 United States Code, Section 2, aid, abet, counsel, command, or solicit a criminal act; as well as Title 18, United States Code, Section 371, that is two or more persons conspiring either to commit any offense against the United States.



## ATTACHMENT B – ITEMS TO BE SEIZED

1. Any evidence or information related to the SUBJECT OFFENSES articulated in the Affidavit in support of the search warrant application.

2. Any evidence or information related to the identity of potential co-conspirators regarding the SUBJECT OFFENSES.

3. Ammunition and firearms such as pistols, revolvers, long guns, or those items similar in type to the documented purchased firearms and or records of firearms purchased;

4. Any and all documents, records, boxes or indicia related to the purchase, sale, transfer or transportation of firearms and/or ammunition;

5. Log books, records, payment receipts, notes, and/or computer lists, ledgers, sales tags and other papers relating to the purchasing, ordering, processing, storage, and distribution of firearms including all records of income and expenses;

6. Electronic equipment, such as but not limited to electronic media (computers, thumb drives, floppy disk, disks etc), and any stored electronic data and/or communications contained therein;

7. Cellular telephone(s) and/or portable cellular telephone(s) and any stored electronic data and/or communications contained therein;

8. Indicia of occupancy, residency, rental and/or ownership of the premises described above, or vehicles located thereon, including but not limited to utility and telephone bills, cancelled envelopes, keys, deeds, purchase lease agreements, land contracts, titles and vehicle registrations;

9. The opening, search and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property heretofore may be maintained;

10. U.S. Currency;

11. Any other items which constitute evidence of crimes as identified above.